UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN PHILLIPS and JEFFREY PHILLIPS, as Administrators of the Estate of MATTHEW PHILLIPS, Deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 22 C 1048 |
| v. | ) ) | Judge Wood |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**THE UNITED STATES' UNOPPOSED MOTION TO STAY**

Defendant United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, requests a stay of this case to allow the closely related criminal case, *United States v. Simonson, et al.*, No. 21 CR 50064 (N.D. Ill.), to proceed through the disposition of charges and any resulting judgment and sentencing, and states as follows in support:

1. Matthew Phillips, Brandon Simonson, and Kristopher Martin were all inmates at United States Penitentiary Thomson, a Bureau of Prisons facility. Indictment, *United States v. Simonson,* Dkt. 2. It is alleged that Simonson and Martin identified as members of a white supremacist group called the Valhalla Bound Skinheads. *Id*. at 2.

2. On March 2, 2020, all three inmates were placed in a recreation cage together, at which time Simonson and Martin attacked Phillips, who was Jewish and who had a tattoo of the Star of David on his chest. Dkt. 1,[1] ¶¶ 9, 17. Phillips died a few days later as a result of the attack. *Id*. at ¶ 19; Indictment, *United States v. Simonson*, Dkt. 2 at 5.

---

[1] Unless otherwise indicated, "Dkt." references are to the docket in this case.

3. On December 7, 2021, a federal grand jury returned an indictment charging Simonson and Martin with second-degree murder, conspiracy to commit murder, a hate crime, and assault. Indictment, *United States v. Simonson*, Dkt. 2. Both defendants are in the process of reviewing the discoverable documents and tangible items produced by the United States. Status Reports, *United States v. Simonson*, Dkt. 55, 57–58. No trial date has been set in that case yet.

4. Plaintiffs Susan and Jeffrey Phillips, as administrators of their son's estate, filed this Federal Tort Claims Act lawsuit in February 2022. Dkt. 1, ¶¶ 35–37. Thus far, the parties have exchanged initial disclosures and agreed to a protective order to govern this proceeding, which was entered by the court. Dkt. 21. Plaintiffs have served a third-party document subpoena and as well as broad initial written discovery requests on the United States.

5. After reviewing the plaintiffs' discovery requests, the United States is now convinced that a stay is necessary to prevent adverse effects on the pending murder prosecution and to ensure that it can proceed untainted and unhindered by the civil case. Plaintiffs (who of course have an interest in the prosecution of their son's murderers) do not oppose this motion.

6. This court has the inherent power to stay civil proceedings pending the completion of a criminal proceeding if the interests of justice require it. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ."); *Campbell v. Eastland*, 307 F.2d 478, 490 (5th Cir. 1962).

7. The interests of justice support a stay of this case under the following factors that courts in this district use to determine whether a stay is warranted: "(1) whether the civil and criminal proceedings involve the same subject matter; (2) whether the government has initiated both proceedings; (3) the posture of the criminal proceeding; (4) the effect on the public interest

of granting or denying a stay; (5) the interest of Plaintiff in proceeding expeditiously, and the potential prejudice that Plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on Defendants if a stay is denied." *Commodity Futures Trading Comm'n v. Nowak*, No. 19 C 6163, 2020 WL 3050225, at *3 (N.D. Ill. June 8, 2020) (citing *Salcedo v. City of Chicago*, 2010 WL 2721864, at *2 (N.D. Ill. July 8, 2010)).

8.  *Same Subject Matter.* The ongoing murder prosecution overlaps almost entirely with the issues raised in plaintiffs' complaint. Even though the civil wrongful death case expands out from the March 2, 2020 attack to include agency knowledge and decisionmaking issues, this factor easily weighs in favor of a stay. *See Tokio Marine Specialty Ins. Co. v. Springfield Shooting Ctr., Inc.*, No. 18 C 3055, 2020 WL 13240706, at *2 (C.D. Ill. Feb. 13, 2020) ("The fact that the criminal case involves the same matter at issue in this civil case favors a stay.").

9.  Relevantly, because of the extensive overlap, allowing the two cases to proceed simultaneously has the inherent potential to create a duplication of effort and a corresponding waste of judicial resources. *United States v. All Meat & Poultry Prod.*, No. 02 C 5145, 2003 WL 22284318, at *5 (N.D. Ill. Oct. 3, 2003) (the possibility of transcripts or other evidence from the criminal proceedings could eliminate the need for certain discovery in the civil proceeding).

10. *Government Involvement.* The United States is party to both the criminal and civil actions, but it initiated only the criminal prosecution. Although the civil case should not present any danger that the *United States* will use the civil discovery process to obtain evidence for use in the criminal prosecution, the presence of the United States as a party to both actions weighs in favor of a stay because of the complications with and tension between the government's criminal discovery obligations and its ability to simultaneously present a defense in this related civil case.

11. *Posture of Criminal Proceeding.* Simonson and Martin were federally indicted on December 7, 2021 (before this civil case was filed); criminal discovery is ongoing. A trial date has not yet been set but is expected once discovery is complete. The indicted status of the criminal case is one of the strongest factors that supports a stay. *All Meat & Poultry Prod.*, 2003 WL 22284318, at *3; *see also Salcedo*, 2010 WL 2721864, at *3. Simonson and Martin, who are unquestionably witnesses in this case, will likely assert their Fifth Amendment privilege against self-incrimination in response to any civil discovery request. Accordingly, discovery into their motivations for the attack will be inefficient, frustrated, and unavailable until after the conclusion of the criminal proceeding anyway, which is another consideration that favors a stay. *See All Meat & Poultry Prod.*, 2003 WL 22284318, at *5.

12. *Public Interests.* The public has "an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008). This is acutely true here, due to the seriousness of the charges against Simonson and Martin. *See Horton v. Pobjecky*, No. 12 C 7784, 2013 WL 791332, at *3 (N.D. Ill. Mar. 4, 2013) (public interest in unhindered prosecution of violent crimes is very high). The public's interest in effective law enforcement—and correspondingly, the United States' interest in protecting the integrity of the criminal charges issued by the grand jury—should be given "substantial weight." *Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 941 (N.D. Ill. 2002) (quoting *Campbell*, 307 F.2d at 487). In other words, if Simonson and Martin are guilty of murder, it is in the public (and the parents') interest that the prosecution not be derailed by a civil proceeding that can simply be temporarily delayed. *See Glover v. Upmann*, No. 19 C 3738, 2020 WL 1433801, at *4 (N.D. Ill. Mar. 24, 2020) (allowing criminal proceedings to continue without civil interference is the "greatest interest").

13. In this case, the civil proceeding may very well have the significant effect of hindering and tainting the criminal proceeding . If the United States acquires information in civil discovery that is relevant to the criminal prosecution (and especially information that is arguably relevant to the defense), it is hard to imagine how that information can be withheld from the defense without putting any criminal conviction at risk. *See* Fed. R. Crim. P. 16; *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153 (1972). This means that criminal discovery will be ongoing so long as new testimony and documents are being produced civilly, reviewed, and then potentially produced again in the criminal matter. Furthermore, exposing other inmates in the recreation area or other inmates at USP Thomson generally, *i.e.*, potential witnesses in the criminal case, to civil depositions in this case could easily compromise the criminal proceeding.

14. Not only will allowing this case to proceed create unreasonable delay and complication for the prosecution, it raises the natural concern that when parallel civil and criminal cases are pending, civil discovery could somehow be abused or used in a way that would circumvent the criminal discovery process. *See Benevolence Int'l Found.*, 200 F. Supp. 2d at 939–40 (citing cases); *see also Chagolla*, 529 F. Supp. 2d at 946. Because of the significant distinctions between civil and criminal discovery, the trial court should not "ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought." *Campbell*, 307 F.2d at 487. In total, without a stay, this case could cause unnecessary delay, complication, and the risk of jury nullification in the prosecution through the injection of tangential or irrelevant issues there.

15. *Plaintiffs' Interests.* Plaintiffs are themselves victims of the criminal defendants' alleged conduct. They therefore have an interest in bringing to justice and holding accountable those offenders who would conspire to kill their son, a fellow inmate in a federal penitentiary.

Plaintiffs also have an interest in the timely resolution of their civil claims and compensation if they prove they are entitled to it. However, the interest of the public (and the parents) in justice and criminal accountability outweighs the financial interest of the parents alone. Yet, the court does not have to necessarily choose between the fair pursuit of the criminal case and the fair pursuit of the civil case; *both* can be pursued fairly. In fact, allowing the criminal case to go forward without interference will not only vindicate the United States and plaintiffs' interest in the pursuit of justice, it also could likely work to benefit the civil case and judicial economy in some ways because common issues can be resolved or the need for certain discovery may be eliminated.

16. *Burden on the United States.* In contrast, the burdens on the United States presented by continued litigation of the civil case are the interference with and delay of its criminal prosecution, as discussed above. In addition, discovery requests in this case will result in a large drain of resources from the criminal prosecution, as the Assistant United States Attorney assigned to the Simonson and Martin case will have to review documents potentially responsive to the plaintiffs' civil discovery requests for work product, grand jury materials, and informant privileges, among other things. This, too, will interfere with the United States' ability to prosecute Simonson and Martin effectively and efficiently. Overall, the United States has a significant interest in protecting the integrity of its prosecutions, and a stay is critical to its ability to conduct the closely related prosecution without civil discovery that will not only interfere with it but will also unnecessarily delay it.

17. Counsel conferred with plaintiffs' attorney, Jeremy Tor of Spangenberg Shibley & Liber LLP, who kindly expressed that plaintiffs do not oppose the United States' request.

18. The parties commit to filing a joint status report upon conclusion of the criminal case and request a status hearing at that time to ensure the prompt resumption of the civil case.

WHEREFORE, the United States requests that the court temporarily stay this civil case pending resolution of the closely related criminal matter, *United States v. Simonson*, No. 21 CR 50064 (N.D. Ill.), to ensure that the criminal case is not jeopardized by the two intertwined cases proceeding on two incompatible tracks at once.

                                      Respectfully submitted,

                                      JOHN R. LAUSCH, Jr.
                                      United States Attorney

                                      By: s/ Kathleen M. Przywara
                                           KATHLEEN M. PRZYWARA
                                           Assistant United States Attorney
                                           219 South Dearborn Street
                                           Chicago, Illinois 60604
                                           (312) 353-4137
                                           kathleen.przywara@usdoj.gov