UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN PHILLIPS and JEFFREY PHILLIPS, administrators of the estate of MATTHEW PHILLIPS, deceased, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 22 C 1048 |
| | ) | |
| v. | ) | Judge Wood |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## **PLAINTIFFS' MOTION TO LIFT OR MODIFY THE STAY**

Plaintiffs Susan Phillips and Jeffrey Phillips move this Honorable Court for an order lifting the stay that was entered a year-and-a-half ago. *See* Dkt. 25. The stay was requested by Defendant United States of America to allow the related criminal case to proceed. *See United States v. Simonson, et al.*, No. 21 CR 50064 (N.D. Ill.). Plaintiffs did not oppose the stay because they expected the criminal case would proceed and conclude in a reasonable period of time given that the events giving rise to criminal case occurred in March 2020 and the indictment was handed down several years ago, in December 2021. Unfortunately, little meaningful progress has been made in the criminal case, and trial is not scheduled to take place until next year.

The disconcertingly slow movement of the criminal case has been detrimental to the civil case and has deprived Plaintiffs of their right to obtain information from the United States regarding the facts and circumstances surrounding the fatal beating of their son, Matthew Phillips, while he was in the custody of the United States at the Thomson prison in Illinois. To prevent further prejudice, Plaintiff are requesting the stay be lifted, either in whole or in part, to allow civil discovery to resume, which should not negatively affect the criminal case.

## I.   <u>Factual Overview</u>

This case, brought under the Federal Tort Claims Act, arises from the brutal and fatal beating of Matthew Phillips at the United States Prison Thomson on March 2, 2020. *See generally* Complaint, Dkt. 1. Prison employees placed Matthew Phillips (who was known to be Jewish) into an outdoor recreation cage with two avowed anti-Semites. *Id.*, paras. 9, 11-12, 17. The anti-Semites attacked Matthew and beat him to the point of unconsciousness. *Id.*, paras., 17, 19, 20. Matthew, who was 31 years old, succumbed to his injuries and died on March 5. *Id.*, para. 19. The attack was not an isolated incident. In fact, Matthew had been attacked previously at the prison by neo-Nazis and had filed a grievance with the prison, explaining that the decision to place him in a recreation yard with neo-Nazis violated BOP policies. *Id.*, paras. 11, 13, 15. The prison guards nonetheless chose to place Matthew in peril on March 2, 2020, enabling the neo-Nazis to savagely beat him. Plaintiffs, Matthew's parents, are entitled to answers and accountability—neither of which they have gotten to date, despite the four-plus years since Matthew's death.

## II.   <u>Procedural History</u>

Before filing the lawsuit, Plaintiffs tried to obtain information by submitting to the United States Bureau of Prisons (BOP) a request under the Freedom of Information Act. *Id.*, para. 6. The BOP refused to provide any information or produce any documents. *Id.* Plaintiffs then commenced this lawsuit on February 28, 2022, and served process on the United States Attorney's office on April 27, 2022. *See* Dkts. 1, 11. Under the Civil Rules, Defendant had 60 days to respond to the complaint, which nearly thrice the amount of time a typical defendant has to respond. *Compare* Fed.R.Civ.P. 12(a)(2) *with* 12(a)(1)(A)(i). On the day the answer was due, Defendant requested an additional 45 days to respond to the complaint, in part because the BOP had not provided defense counsel "the necessary information about the case." Dkt. 11, paras. 3, 5. As a matter of courtesy, Plaintiffs' counsel did not object. *Id.*, para. 9.

Following a case management conference, the parties exchanged initial disclosures. Plaintiffs produced all discoverable, non-privileged documents in their possession, including the autopsy report, medical records, and letters Matthew wrote during his time in prison. Defendant produced a video of the attack but nothing else.

On December 6, 2022, Plaintiffs propounded a set of 15 interrogatories and 32 requests for production. Rather than respond to the discovery requests, Defendant filed a motion to stay this civil case while the criminal case against the two neo-Nazis proceeded. Dkt. 24. Plaintiffs did not oppose the stay, expecting the criminal case would proceed apace and toward resolution in a reasonable amount of time. That has not happened.

The criminal case began when the grand jury indicted the two attackers on December 7, 2021, for second-degree murder, conspiracy to commit murder, a hate crime, and assault. *See* Indictment, *United States v. Simonson*, Dkt. 2. It is clear from the criminal docket, however, that little has been accomplished during the past three-and-a-half years, although the Court recently selected a trial date for next year. *See* Status Report, *United States v. Simonson*, Dkt. 188.

## III. <u>Argument</u>

### a. The stay should be lifted

Staying a civil case due to parallel criminal litigation is "an extraordinary remedy." *Commodity Futures Trading Comm'n v. Nowak*, 2020 WL 3050225, at *2 (N.D. Ill. June 8, 2020). And it is not automatic. *See Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 945 (N.D. Ill. 2008). When stays are granted, it is often because a party is a defendant in ***both*** the criminal case ***and*** the civil case. *See Id.* In those circumstances, without a stay, the defendant "will have to decide whether to claim the privilege against self-incrimination" in the civil case. *Id.* at 945. "Any defendant who chooses to invoke the privilege runs the risk that this will be used as the basis for

an adverse inference against him or her." *Id.* That risk is not present here because the United States is not a defendant in the criminal case. Thus, the primary reason for a stay does not exist.

There are other factors courts consider when deciding whether to grant a stay. *Id.* They include: "(1) whether the civil and criminal proceedings involve the same subject matter; (2) whether the government has initiated both proceedings; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of Plaintiff in proceeding expeditiously, and the potential prejudice that Plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on Defendants if a stay is denied." *Commodity Futures Trading Comm'n.*, 2020 WL 305022, at *3. Those factors weigh in favor of lifting the stay.

### i.   Factor Two: Government initiation of the proceedings

When both the civil and criminal actions are brought by the government, "there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination." *Cruz v. Cnty. of DuPage*, 1997 WL 370194, at *3 (N.D. Ill. June 27, 1997). Because the United States did not bring this civil case, "the danger that is inherent when the government is bringing both actions is not present." *Id.*

The related risk of allowing defendants "to use the civil discovery process to ferret out the particulars of the prosecuting authorities' case against them" also does not exist because the defendants in the criminal case are not parties to this case. *Chagolla*, 529 F. Supp. 2d at 946.

### ii.   Factor Three: Posture of the criminal case

The posture of the criminal case militates in favor of lifting the stay, as the criminal case has been ongoing, without interference from the civil case, for an undue amount of time—*i.e.*,

more than three-and-a-half years. *See Chagolla* 529 F. Supp. 2d at 948 (granting a stay but only for four months); *Hare v. Custable*, 2008 WL 1995062 (N.D. Ill. 2008) (granting only a four-month stay).

### iii.   Factor Four: Public interest

The public has a legitimate interest in the prompt disposition of civil litigation. *See Lee v. City of Chicago*, 2009 WL 10739927, at *2 (N.D. Ill. Oct. 9, 2009); *Doe v. City of Chicago*, 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005). This "interest has been enacted into positive law through the Civil Justice Reform Act of 1990." *Lee*, 2009 WL 10739927, at *2 (citing 28 U.S.C. §§ 471-82). A stay "quite obviously will impair that interest." *Chagolla*, 529 F. Supp. 2d at 947.

At the same time, ***lifting*** the stay will ***not*** impair the competing interest in "ensuring that the criminal process can proceed untainted by civil litigation." *Lee*, 2009 WL 10739927, at *2. That is because there is no danger that the criminal defendants, who are not parties to this case, will try to "use liberal civil discovery procedures to gather evidence that [they] might not be entitled to under the more restrictive criminal rules." *Id.* (citing *Degen v. United States*, 517 U.S. 820, 825 (1996) and *In re Film Recovery Sys., Inc.*, 804 F.2d 386, 389 (7th Cir. 1986)).

### iv.   Factor Five: Plaintiffs' interest in proceeding expeditiously

Plaintiffs have a "significant interest" in having their case resolved and obtaining any compensation to which they are entitled. *Chagolla*, 529 F. Supp. 2d at 947. Further delay raises the risk of evidence disappearing and memories fading. *Glover v. Upmann*, 2020 WL 1433801, at *3 (N.D. Ill. Mar. 24, 2020). *See also Commodity Futures Trading Comm'n.*, 2020 WL 3050225, at *2, *4 (finding that it is "always better to get discovery early, before memories fade, computer files corrupt, and documents are lost," and that "the longer [the parties] have to wait, the more likely it is that memories will fade and relevant documents will get lost").

Plaintiffs have already endured more than four years of anguish as they have patiently waited for answers and accountability. Continuing the stay will delay justice for the family and needlessly compound the suffering.

### v. *Factor Six: Potential burden on the defendant*

Because the United States is not a defendant in the criminal case, lifting the stay will not impose an unfair burden, as the United States will not "be faced with the choice of whether to claim or waive the privilege against self-incrimination." *Chagolla*, 529 F. Supp. 2d at 947. *Cf. id.* ("Any individual defendant who is forced to respond to discovery will be faced with the choice of whether to claim or waive the privilege against self-incrimination…A civil defendant in this situation who is effectively backed into a corner in which he has no viable choice but to claim the privilege is forced to face a significant risk of unfair prejudice that may be virtually impossible to remedy.").

### b. **In the alternative, the parties should be permitted to engage in written discovery**

As an alternative to lifting the stay entirely, the parties should at least be allowed to engage in written discovery. Even when a court decides a stay is appropriate, written discovery is often allowed to proceed, as this allows the civil litigation to move forward without impinging on the criminal case. *See Chagolla*, 529 F. Supp. 2d at 948 (granting a stay but nonetheless granting the plaintiff "leave to serve written discovery requests" upon the defendant); *Commodity Futures Trading Comm'n*, 2020 WL 3050225, at *5 (granting a stay but allowing written discovery to proceed); *Glover*, 2020 WL 1433801, at *4 (granting a stay of deposition discovery but not written discovery). Written discovery will not get in the way of the criminal case, but it will allow Plaintiffs to begin obtaining important documents and information about what happened to their son—and thereby allow at least *some* progress towards justice.

**IV.**  **Conclusion**

In the interest of justice and to promote the efficient resolution of this civil case, Plaintiffs respectfully request that the stay be lifted completely. Alternatively, the Court should allow the parties to proceed with document discovery for the next few months, at which point the issue of whether to lift the stay entirely can be revisited.

Respectfully submitted,

*/s/ Jeremy A. Tor*
JEREMY A. TOR (*Admitted Pro Hac Vice*)
NICHOLAS A. DICELLO (*Admitted Pro Hac Vice*)
MICHAEL P. LEWIS (*Admitted Pro Hac Vice*)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232 | (216) 696-3924 (FAX)
*jtor@spanglaw.com*
*ndicello@spanglaw.com*
*mlewis@spanglaw.com*


Antonio M. Romanucci
David A. Neiman
Blake J. Kolesa
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
*aromanucci@rblaw.net*
*dneiman@rblaw.net*
*bkolesa@rblaw.net*

**Counsel for Plaintiffs**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 12th day of July 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record and may be obtained through the Court's CM/ECF Systems.

*/s/ Jeremy A. Tor*
JEREMY A. TOR (*Admitted Pro Hac Vice*)
NICHOLAS A. DICELLO (*Admitted Pro Hac Vice*)
MICHAEL P. LEWIS (*Admitted Pro Hac Vice*)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232 | (216) 696-3924 (FAX)
*jtor@spanglaw.com*
*ndicello@spanglaw.com*
*mlewis@spanglaw.com*

***Counsel for Plaintiffs***
