UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN PHILLIPS and JEFFREY PHILLIPS, as Administrators of the Estate of MATTHEW PHILLIPS, Deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 22 C 1048 |
| v. | ) ) | Judge Wood |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO LIFT OR MODIFY THE STAY**

**Introduction**

After two federal inmates were indicted for murdering fellow inmate Matthew Phillips, *United States v. Simonson, et al.*, No. 21 CR 50064 (N.D. Ill. filed Dec. 7, 2021), that inmate's parents (as administrator of his estate) brought this Federal Tort Claims Act action against the United States, alleging that the Bureau of Prisons' negligence contributed to the murder. The parallel civil and criminal cases involve many of the same parties, issues, and facts, and the continued litigation of the civil matter would interfere with the criminal proceeding. To prevent this civil case from damaging the prosecution of Matthew Phillips's alleged murderers, this court on January 24, 2023, entered an order staying this case pending resolution of the closely related criminal matter. Dkt. 25. Plaintiffs, for the same reason presumably, did not oppose the stay. Dkt. 24 ¶ 5. The criminal case is set for trial to commence on May 5, 2025. No. 21 CR 50064, Dkt. 188.

Plaintiffs have now filed a motion asking the court to vacate or modify the stay and allow them to proceed with civil discovery. Plaintiffs have not shown "good cause" as is required under

Fed. R. Civ. P. 16(b)(4) for a lifting or modifying the stay order. Nothing has changed since the entry of the stay except that the criminal case now has a firm trial date just nine months away. Plaintiffs' motion should be denied.

## Background

Matthew Phillips, Brandon Simonson, and Kristopher Martin were all inmates at United States Penitentiary Thomson, a Bureau of Prisons facility located in Thomson, Illinois, in late 2019 and early 2020. *United States v. Simonson, et al.*, No. 21 CR 50064, Indictment, Dkt. 2 (N.D. Ill. Dec. 7, 2021). It is alleged that Simonson and Martin identified as members of a white supremacist group called the Valhalla Bound Skinheads. *Id*. at 2. On March 2, 2020, all three inmates were placed in a recreation cage together, at which time Simonson and Martin attacked Phillips, who was Jewish and who had a tattoo of the Star of David on his chest. Dkt. 1,[1] ¶¶ 9, 17. Phillips died a few days later as a result of the attack. *Id*. at ¶ 19; Indictment, *United States v. Simonson*, Dkt. 2 at 5.

On December 7, 2021, a federal grand jury returned an indictment charging Simonson and Martin with second-degree murder in violation of 18 U.S.C. § 1111(a) and (b), conspiracy to commit murder in violation of 18 U.S.C. § 1117, a hate crime in violation of 18 U.S.C. § 249(a)(1)(B)(i), and assault in violation of 18 U.S.C. § 113(a)(6) and (b)(2). *United States v. Simonson*, Indictment, Dkt. 2. While the government provided a bulk of discovery by July 2022, the criminal defendants in 2023 requested vast amounts of discovery exceeding what is required to be produced in criminal cases, and the United States has been litigating against these aggressive discovery requests by the defense counsel in the criminal case. Those issues are being resolved, and the case is now set for trial on May 5, 2025.

---

[1] Unless otherwise indicated, "Dkt." references are to the docket in *this* case.

Plaintiffs in this *civil* case, Susan and Jeffrey Phillips, as administrators of the estate of their son, submitted an administrative tort claim in June 2021 to the BOP, alleging that its failure to separate inmates with known conflicts and supervise the recreation yard caused Phillips's death. Dkt. 1, ¶¶ 35, 36. After the claim was denied, the parents filed this lawsuit in February 2022. Dkt. 1. As in their administrative claim, plaintiffs allege that the BOP was negligent by not separating Phillips, Simonson, and Martin during recreation time because of their competing gang and religious affiliations. *Id*. at ¶¶ 12, 23, 26–27, 42–43, 51–52. Plaintiffs further allege that the BOP was negligent when its employees allegedly abandoned their posts and failed to intervene in Martin's and Simonson's attack on Phillips. *Id*. at ¶¶ 18, 29, 31, 42–43, 51–52. Thus far, the parties have exchanged initial disclosures and agreed to a protective order to govern this proceeding, which was entered by the court. Dkt. 21. Plaintiffs have served a third-party document subpoena as well as broad initial written discovery requests on the United States, seeking various items, including information about any separation orders and inmate monitoring documents that were in place for the three inmates (Phillips, Simonson, and Martin) as well as Simonson's and Martin's entire agency files, agency and institutional policies regarding inmate monitoring and placement, investigatory documents, and incident reports and investigatory files for every violent altercation or suicide incident at USP Thomson from 2017 to the present.

The parallel civil and criminal cases involve many of the same parties, issues, and facts. On January 24, 2023, the court entered an order staying this case pending resolution of the closely related criminal matter. Dkt. 25. Plaintiffs did not oppose the stay. Dkt. 24 ¶ 5. They now want to at least partially lift the stay in this civil case, although the criminal case is still pending and has a trial date.

**Argument**

I.     **Plaintiffs Have Not Shown Good Cause to Lift or Modify the Stay.**

Plaintiffs motion to lift or modify the stay should be denied because plaintiffs have failed to show good cause as required by Fed. R. Civ. P. 16(b)(4), which provides that a "schedule may be modified only for good cause and with the judge's consent." There are no changed circumstances that warrant this court changing its order staying the civil case. Plaintiffs do not contend that the court erred by entering its order staying the civil case. Indeed, they agreed to the stay, which the court appropriately entered. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citing cases); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

The only *change* is that plaintiffs have now decided to reverse their position; their change of mind is not sufficient to warrant this court changing the order that it properly entered last year. Plaintiffs assert that the criminal case has been ongoing for "three-and-a-half years" during which time, according to plaintiffs, "little has been accomplished." Dkt. 39 at 3. Not so. Putting aside that the criminal case has been ongoing for only *two* and a half years, not *three* and a half as plaintiffs mistakenly assert, there is no basis for plaintiffs' claim that "little has been accomplished" in the criminal case. Over the last year while the civil stay has been in place, criminal defense counsel has vigorously pressed aggressive discovery demands, to which the government has appropriately responded both in writing and during multiple court hearings. The criminal case now has a trial date, which is only nine months away. The set trial date is not a changed circumstance that warrants lifting or modification of the stay. Just the opposite. It makes no sense to have stayed the case for a year and a half only to undo and forfeit the benefits that the stay has provided now that a trial date for the criminal case is in sight.

Ironically, lifting or modifying the stay as plaintiffs are seeking, would play into the defense delay strategy in the criminal case because the discovery generated in the civil case would have to be provided to the criminal prosecutors, sorted, and litigated in the criminal case. Forcing the government to do this is also inefficient because it will take away time, resources, and energy needed to prosecute and prepare the criminal case for trial.

## II.  The Interests of Justice Continue to Support the Stay.

It is well established that the United States has a strong interest in "ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008). That strong interest as well as the interests of justice continue to support the stay of this case under the following six non-exhaustive factors that courts in this district use to determine whether a stay is warranted: "(1) whether the civil and criminal proceedings involve the same subject matter; (2) whether the government has initiated both proceedings; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of Plaintiff in proceeding expeditiously, and the potential prejudice that Plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on Defendants if a stay is denied." *Commodity Futures Trading Comm'n v. Nowak*, No. 19 C 6163, 2020 WL 3050225, at *3 (N.D. Ill. June 8, 2020) (citing *Salcedo v. City of Chicago*, 2010 WL 2721864, at *2 (N.D. Ill. July 8, 2010)). "In effect, the court must balance the civil plaintiff's right to prepare his case promptly against the public interest in withholding full disclosure sought by the civil plaintiff." *Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 938 (N.D. Ill. 2002) (citing *Campbell*, 307 F.2d at 490).

The United States has a significant interest in protecting the integrity and effectiveness of its prosecutions, and continuation of the stay is critical to its ability to conduct the pending closely related prosecution without civil discovery that would not only interfere with the prosecution but

would also unnecessarily delay it. The continued stay of this case through the disposition of criminal charges and any resulting judgment and sentencing will enable the United States to prosecute its case without the complications and interference presented, for example, by subjecting potential criminal witnesses to civil discovery. The stay continues to potentially benefit the civil action by resolving common issues, reducing the need for certain discovery, and eliminating inefficient discovery that could be frustrated by the criminal proceedings. On balance, the six factors described in *Nowak* weigh in favor of a stay.

1. **Same Subject Matter**

First, the ongoing criminal murder prosecution overlaps almost entirely with the issues raised in plaintiffs' complaint. Both cases involve the circumstances surrounding and reasons for the March 2, 2020 attack on Matthew Phillips and, specifically, Simonson's and Martin's motivations for carrying out the attack. Even though the civil wrongful death case expands out from the attack itself to include agency knowledge and decision-making issues, this factor easily weighs in favor of a stay. *See Tokio Marine Specialty Ins. Co. v. Springfield Shooting Ctr., Inc.*, No. 18 C 3055, 2020 WL 13240706, at *2 (C.D. Ill. Feb. 13, 2020) ("The fact that the criminal case involves the same matter at issue in this civil case favors a stay."); *accord Nowak*, 2020 WL 3050225, at *3.

Because of the extensive overlap between the criminal prosecution and this civil matter, lifting or modifying the stay to allow the two cases to proceed simultaneously would have the potential to create a duplication of effort and a corresponding waste of judicial resources. *United States v. All Meat & Poultry Prod.*, No. 02 C 5145, 2003 WL 22284318, at *5 (N.D. Ill. Oct. 3, 2003). For individuals who may be considered as a witness in both cases, the stay of the civil case until the completion of the criminal case will likely reduce the need for some civil discovery from them and, at a minimum, it will assist in the orderly litigation of this case, as the civil plaintiffs

will have non-privileged witness statements and trial testimony *before* civil depositions will occur. *See id.* (finding that the possibility of transcripts or other evidence from the criminal proceedings could eliminate the need for certain discovery in the civil proceeding). Conversely, if the court lifts or modifies the stay to allow civil discovery to proceed, the discovery generated in this civil case will likely be used or have the effect of causing unnecessary delay, complication, and the risk of jury nullification in the criminal prosecution through the injection of tangential or even irrelevant issues into that matter. The criminal defendants will have access to all of the civil discovery that the United States provides or receives, and (as discussed below) criminal defendants should not be permitted to avoid the limits on criminal discovery through civil discovery. Because of these issues, a stay of this case will promote judicial economy, which is a related and relevant consideration in this analysis. Plaintiffs' memorandum simply skips over this factor entirely, an implicit recognition that it supports the stay that the court has properly entered.

    **2.    Government Involvement**

The United States is party to both the criminal and civil actions, but it initiated only the criminal prosecution. Plaintiffs argue that the fact that the United States did not initiate both actions weighs against a stay because the civil case does not present any danger that the *United States* will use the civil discovery process to obtain evidence for use in the criminal prosecution. The United States agrees that that particular danger is not present, but because the United States is a party to both cases, there is still the concern that discovery in this case would allow the civil discovery process to expand the scope of discovery in the criminal prosecution beyond that allowed by the criminal discovery rules. In fact, before the civil stay was entered, defense counsel for Simonson wrote to the criminal prosecutor that gathering what he anticipated would be a "massive" amount of discovery materials from the civil case would take time and would affect his

7

trial readiness. The referenced email chain (between criminal defense counsel Richard Kling and AUSA Vincenza Tomlinson) is attached as an exhibit.

The United States' participation as a party to both actions further weighs in favor of a stay because of the complications with and tension between the government's criminal discovery obligations and its ability to simultaneously present a defense in this civil case. And the fact that the plaintiffs in this civil case, as the parents of Phillips, are victim-witnesses in the criminal prosecution who may be called as witnesses at trial leads to the conclusion that discovery and testimony elicited in the civil case will undoubtedly impact the criminal prosecution. Again, given the strong interest in protecting the integrity of the criminal matter, this factor weighs in favor of a stay.

### 3. Posture of Criminal Proceeding

As already mentioned, Simonson and Martin were federally indicted on December 7, 2021 (before this civil case was filed) in the Western Division of the Northern District of Illinois, and criminal discovery is ongoing. The case is set for trial to begin May 5, 2025. The indicted status of the criminal case is one of the strongest factors that supports the stay. *All Meat & Poultry Prod.*, 2003 WL 22284318, at *3; *see also Salcedo*, 2010 WL 2721864, at *3 ("[O]nce an indictment is handed down, as is the case here, a stay is appropriate."); *Cruz v. Cnty. of DuPage*, No. 96 C 7170, 1997 WL 370194, at *3 (N.D.Ill., June 27, 1997) (same).

The pending prosecution and its posture raise issues that will affect the civil case. For example, plaintiffs have listed "all eyewitnesses" to the events leading up to, during, and following the incident on their initial disclosure witness list; this necessarily includes Simonson and Martin. Simonson and Martin are also listed on the government's disclosures as individuals with knowledge about the case. However, Simonson and Martin will likely assert their Fifth Amendment privilege against self-incrimination in response to any civil discovery request.

Because their motivations for attacking Phillips are central to this (and the criminal) case, discovery into this topic likely will be inefficient, frustrated, and unavailable until after the conclusion of the criminal proceeding anyway. A stay is favored where the outcome of a criminal case can be expected to remove the predicate for the assertions of Fifth Amendment rights by potential deponents. *See All Meat & Poultry Prod.*, 2003 WL 22284318, at *5. In addition, plaintiffs in this *civil* case appear interested in pursuing discovery related to or from the other inmates in the recreation area or other inmates at USP Thomson, *i.e.*, potential witnesses in the *criminal* case, which would be an appropriate action in the usual civil wrongful death suit. But the exposure of these potential criminal witnesses to civil depositions could easily compromise the criminal proceeding. That is, proceeding with civil discovery could present a risk to the prosecution's universe of potential witnesses.

    4.    **Public Interests at Stake**

It is unquestionably in the public interest to hold individuals accountable for any criminal behavior, especially violent criminal behavior like murder. Along these lines, the public has "an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla*, 529 F. Supp. 2d at 947. This is acutely true here, due to the seriousness of the charges against criminal defendants Simonson and Martin. *See Horton v. Pobjecky*, No. 12 C 7784, 2013 WL 791332, at *3 (N.D. Ill. Mar. 4, 2013) ("the public interest in the unhindered prosecution of violent crimes is very high"); *accord Tokio Marine Specialty Ins.*, 2020 WL 13240706, at *3. Criminal liability can incapacitate guilty defendants from future wrongdoing and it "carries with it moral disapprobation and may be more effective at ensuring both general deterrence and specific deterrence." *Salcedo*, 2010 WL 2721864, at *3. The public's interest in effective law enforcement—and correspondingly, the United States' interest in protecting the integrity of the criminal charges issued by the grand jury—should be given "substantial weight." *Benevolence*

9

*Int'l Found., Inc.*, 200 F. Supp. 2d at 941 (quoting *Campbell*, 307 F.2d at 487). In other words, if Simonson and Martin are guilty of murder, it is in the public interest (and the parents' interest) that the prosecution not be derailed by a civil proceeding that can simply be temporarily delayed.

Although the public also has an interest in the prompt disposition of civil litigation, that interest is outweighed by the interest in pursuing justice in the related criminal prosecution and allowing the prosecution to proceed unimpaired. *E.g.*, *Sec. & Exch. Comm'n v. Shkreli*, No. 15 C 7175, 2016 WL 1122029, at *7 (E.D.N.Y. Mar. 22, 2016) ("Ultimately, the court concludes that the public's interest in the effective enforcement of the criminal law is the paramount public concern."). That is, the "possibility that the orderly progress of the criminal cases and investigations—particularly those involving the exact same incidents at issue in the present case—will be hindered by issues that could arise from ongoing civil discovery is significant enough to be worthy of consideration." *Chagolla*, 529 F. Supp. 2d at 947; *see also Glover v. Upmann*, No. 19 C 3738, 2020 WL 1433801, at *4 (N.D. Ill. Mar. 24, 2020) (noting that allowing criminal proceedings to continue without civil interference is the "greatest interest").

If the court were to lift or modify the stay entered in this case, the resulting civil discovery may very well have the significant effect of hindering and tainting the criminal proceeding. Because the United States is a defendant in this civil case, it is likely that, despite the protective order in place, all discovery in the civil case could either be discoverable or subject to disclosure obligations in the criminal case, meaning that the criminal case would effectively be postponed for as long as — and for each time that — additional civil discovery were produced or generated. Put differently, if the United States acquires information in civil discovery that is relevant to the criminal prosecution (and especially information that is arguably relevant to the defense), it is hard to imagine how that information can be withheld from the defense in the criminal case without putting any criminal conviction at risk. *See* Fed. R. Crim. P. 16; *Brady v. Maryland*, 373 U.S. 83,

87 (1963) (government violates a criminal defendant's due process rights when it fails to disclose evidence favorable to the defendant and material to guilt or punishment); *Giglio v. United States*, 405 U.S. 150, 153 (1972) (extending *Brady* to impeachment evidence). This means that criminal discovery will be ongoing so long as new testimony and documents are being produced civilly, reviewed, and then potentially produced again in the criminal matter.

Since the criminal murder prosecution and the civil wrongful death case concern the same acts, there would certainly be significant overlap in the gathering of evidence in the civil and criminal cases if the court were to lift or modify the stay to allow that gathering to proceed at the same time in both cases. Not only will this create unreasonable delay for the prosecution, but this also raises the natural concern that when parallel civil and criminal cases are pending, civil discovery may undermine the more limited criminal discovery process. *See Benevolence Int'l Found.*, 200 F. Supp. 2d at 939–40 (discussing the need to harmonize the conflicting discovery rules and prevent those applicable to one suit from doing violence to those pertaining to the other) (citing cases, including *United States v. Phillips*, 580 F. Supp. 517, 518–19 (N.D. Ill. 1984)). Indeed, "the pendency of parallel criminal and civil matters poses the related risk of giving persons who have been accused criminally or whose conduct is under investigation the ability to use the civil discovery process to ferret out the particulars of the prosecuting authorities' case against them, an opportunity they would not have if no civil case were pending." *Chagolla*, 529 F. Supp. 2d at 946.

Ultimately, the principles supporting judicial stays are magnified in cases where, as here, a civil litigant seeks discovery into subjects at issue in the parallel criminal proceeding. Because of the significant distinctions between civil and criminal discovery, the trial court should not "ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought." *Campbell*, 307 F.2d at 487; *see also Phillips*, 580 F. Supp. at 520 (granting protective

order and ordering the cessation of civil discovery until criminal trial was complete to prevent discovery abuses). Accordingly, it is in the public's interest to allow the prosecution of violent homicide to proceed free from interference from a related civil action and fully within the applicable rules of criminal procedure.

     **5.**     **Plaintiffs' Interests**

Plaintiffs—the mother and father of a homicide victim—are themselves victims of the criminal defendants' alleged conduct. They therefore have an interest in bringing to justice and holding accountable those offenders who would conspire to kill a fellow inmate in a federal penitentiary. To be sure, plaintiffs also have an interest in the timely resolution of their civil claims and compensation if they prove they are entitled to it. However, the interest of the public (and the parents) in justice and criminal accountability outweighs the financial interest of the parents alone. *E.g.*, *Kaiser v. Stewart*, No. 96 C 6643, 1997 WL 66186, at *4 (E.D. Pa. Feb. 6, 1997) ("While a civil litigant with a private dispute has an interest in the prompt disposition of his or her claims, the public has a greater interest in enforcement of the criminal law. . . . This interest alone may be enough to stay the entire civil proceeding . . . ."). Although delay admittedly is not a benefit to any case, the stay of this civil case is temporary and will not impair plaintiffs' ability to litigate it after the conclusion of the criminal prosecution, which is now in sight.

The court does not have to necessarily choose between the fair pursuit of the criminal case and the fair pursuit of the civil case; *both* can be pursued fairly. In fact, continuing to allow the criminal case to go forward without interference will not only vindicate the United States' and the plaintiffs' interest in the pursuit of justice, it also will likely work to benefit the civil case and judicial economy in some ways because common issues can be resolved or the need for certain discovery may be eliminated. Accordingly, the United States is not aware of any significant burden that is imposed on plaintiffs associated with the stay of this case.

### 6. Burden on United States

In contrast, the burdens on the United States that would be presented by lifting or modifying the stay of the civil case are the interference with and unnecessary delay of its criminal prosecution of two inmates charged with committing a terrible and violent crime, as already mentioned in the discussion of various factors above. Not only would the civil discovery in this matter complicate, delay, and possibly impair the criminal prosecution by its introduction or production there, discovery requests from the plaintiffs in this case will result in a large drain of resources from the criminal prosecution, as the Assistant United States Attorney assigned to the Simonson and Martin case would have to review documents potentially responsive to the plaintiffs' civil discovery requests for work product, grand jury materials, and informant privileges, among other things. This, too, would interfere with the United States' ability to prosecute Simonson and Martin effectively and efficiently.

Overall, "[a]dministrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." *Campbell*, 307 F.2d at 487. In weighing the interests between the criminal prosecution and this case, the overriding public interest in punishing persons responsible for crimes means that the criminal prosecution should take priority and be tried first. Therefore, it is in the interests of justice to continue to stay this civil case pending resolution of the related criminal case.

**Conclusion**

For the foregoing reasons, the plaintiffs' motion to lift or modify the stay should be denied.

        Respectfully submitted,

        MORRIS PASQUAL
        Acting United States Attorney

        By: s/ Jonathan Haile
           JONATHAN HAILE
           Assistant United States Attorney
           219 South Dearborn Street
           Chicago, Illinois 60604
           (312) 886-2055
           jonathan.haile@usdoj.gov

# EXHIBIT

| | |
|---|---|
| **From:** | Richard Kling |
| **To:** | Tomlinson, Vincenza (USAILN) |
| **Subject:** | Re: [Ext] RE: [EXTERNAL] Simonson startus report |
| **Date:** | Tuesday, November 29, 2022 9:35:43 AM |

Obviously depends on whether any plea is going to be reasonable in light of the charges in light of his back. I understand the families position. But there's a massive discovery in this case, and I also have a massive discovery that I'm attempting to gather from the civil case. So it is going to take some time. Moreover, until I can share the discovery with my client, and discuss the discovery with my client, and give materials to my client, there is no way that I will be close to being ready for trial.

Richard S. Kling
Clinical Professor of Law
Chicago Kent College of Law
rkling@kentlaw.edu
312-906-5075(o)
312-497-1004 (c)

> On Nov 29, 2022, at 9:05 AM, Tomlinson, Vincenza (USAILN) <Vincenza.Tomlinson@usdoj.gov> wrote:
>
> Hi Richard,
>
> The family is getting anxious and eager to move forward and I don't blame them for obvious reasons.   Is there a date where you anticipate finishing your review of the discovery? Do you foresee this going the trial route or resolving this with a plea?   Please let me know.
>
> Thanks,
> Enza
>
> -----Original Message-----
> From: Richard Kling <rkling@kentlaw.iit.edu>
> Sent: Tuesday, November 29, 2022 7:18 AM
> To: Tomlinson, Vincenza (USAILN) <VTomlinson@usa.doj.gov>
> Subject: [EXTERNAL] Simonson startus report
>
> Hope you are well
> Do you want to file or shall I? Request another 60 days?
> Take care
>
> Richard S. Kling
> Clinical Professor of Law
> Chicago Kent College of Law
> rkling@kentlaw.edu
> 312-906-5075(o)
> 312-497-1004 (c)